FILED
07 DEC 21 PM 2:55

[CLERK], U.S.
BANKRUPTCY COURT
TOLEDO, OHIO

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: | **JUDGE RICHARD L. SPEER** |
| Robert Wilson | Case No. 07-3061 |
| Debtor(s) | (Related Case: 06-33559) |
| Kimco Leasing Co. | |
| Plaintiff(s) | |
| v. | |
| Robert Wilson | |
| Defendant(s) | |

## DECISION AND ORDER

This cause is before the Court after a Trial on the action brought by the Plaintiff, entitled "Complaint to Determine the Nondischargeability of Debt and Objecting to Discharge." (Doc. No. 1). At the conclusion of the Trial, the Court deferred ruling on the matter so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity and finds, for the reasons that are now explained, that the Plaintiff's has met its burden with respect to its Complaint to Determine the Dischargeability of its individual debt, but that its Complaint objecting to the Debtor's entire discharge should be Dismissed.

## FACTS

On December 6, 2006, the Defendant/Debtor, Robert Lee Wilson (hereinafter the "Debtor"), filed a bankruptcy petition in this Court for relief under Chapter 7 of the United States Bankruptcy

Kimco Leasing Co. V. Robert Wilson
Case No. 07-3061

Code. At the time he sought relief in this Court, the Debtor was the owner of at least six inactive businesses, including RL Wilson, Inc. On April 5, 2005, the Debtor, both in his personal capacity and in his capacity as president of RL Wilson, Inc., entered into a leasing agreement with the Plaintiff, RJH of Florida, Inc. dba Kimco Leasing Co. (hereinafter referred to as the "Creditor").

The lease entered into between the Parties was for office furniture. The terms of the lease required monthly payments for 36 months, at a total cost of $7,494.00. The Debtor placed the furniture in an office location rented by his business, RL Wilson, Inc. This office space was also shared with another company, Premiere Mortgage, whom also used and had access to the office furniture. In addition to providing furnishings and office space, the Debtor worked at Premiere Mortgage, until around March 2006 when both RL Wilson Inc. and Premiere Mortgage ceased operations.

After the cessation of its business operations, RL Wilson defaulted on its lease obligations for both the office space and the office furniture. RL Wilson also physically vacated the office space, with the Debtor sometime thereafter moving some of the company's property, including some of the leased office furniture, to a storage facility. During this same period of time, the Plaintiff sought possession of the furniture. The Debtor, however, did not promptly comply with this request, only returning the office furniture after the commencement of this action on March 26, 2007. (Doc. No. 1). In addition, the most valuable items of property, three Lazy Boy chairs and a 'Hon Executive Leather Chair,' were never returned. Together, these items of furniture, along with nine missing chairmats, have an estimated value of $2,536.55. This amount, according to the Plaintiff, constitutes its monetary damages.

## DISCUSSION

This matter is before the Court on the Creditor's Complaint to Determine Dischargeability and Objection to Discharge. Determinations concerning the dischargeability of particular debts and

Page 2

Kimco Leasing Co. V. Robert Wilson
Case No. 07-3061

objections to discharge are deemed core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I)/(J). Accordingly, this Court has the jurisdictional authority to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

The Plaintiff's Complaint to Determine Dischargeability and Objection to Discharge cites to these statutory provisions: 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6); and 11 U.S.C. §§ 727(a)(2), (a)(4), and (a)(7). Of these six causes of action, however, the Creditor set forth that it "relies primarily on the provisions of 11 U.S.C. § 523(a)(6) and on the grounds that the Debtor's refusal to return the leased equipment after a demand for its return constitutes conversion." (Doc. No. 20, ¶ 5). The evidence at Trial likewise centered almost entirely on whether the claim held by the Creditor constituted a nondischargeable debt under § 523(a)(6). Accordingly, the Court's analysis will focus on the applicability of this provision.

The bankruptcy discharge, the underlying goal of any debtor, is not applicable to all types of debts. Congress, for reasons for public policy, placed certain categories of debts beyond the scope of the bankruptcy discharge. One of these categories of nondischargeable debts: those which arise as the result of a debtor's morally reprehensible conduct, thus implementing a primary policy goal of the Bankruptcy Code of limiting its benefits to only the honest, but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr.N.D.Ohio 2000).

Section 523(a)(6) serves as a cornerstone of this policy by excepting from discharge any debt which is shown to have arisen as the result of a debtor's "willful and malicious" conduct. In full, this provision provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

Page 3

Kimco Leasing Co. V. Robert Wilson
Case No. 07-3061

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

As with other provisions governing nondischargeability, it is the Creditor's burden to establish, by at least a preponderance of the evidence, the applicability of this provision. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). For this burden, the Creditor set forth that the "Debtor maliciously and intentionally caused injury to [it] by converting the office equipment to his own personal use and putting it beyond the reach of plaintiff." (Doc. No. 20, at pg. 2).

Insofar as it involves the allegation concerning the conversion of its property, these facts are not in dispute: Upon the Debtor's default of the Parties' lease agreement, the Creditor made a demand for the return of its office furniture; and afterwards, the Debtor failed to promptly account for the furniture. The Creditor's position regarding the conversion of its property is thus necessarily correct.

The tort of conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Consistent therewith, the tort of conversion serves to protect one having an ownership interest or other superior right in property against the derogation of that right by another having an inferior interest in the property. In this respect, a lease of goods leaves ownership of the leased property in the hands of the lessor; the lessee's interest in the property is limited to that of a present right of possession. O.R.C. § 1310.01(A)(10). A lessee, such as the Debtor here, who acts in derogation of a lessor's ownership rights, therefore, becomes liable for the conversion of the lessor's property. *See* 18 OHIO JUR. 3D *Conversion and Replevin* § 14 (2007).

Notwithstanding, the tort of conversion will not always couple with an action to determine dischargeability brought under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) ("not every tort judgment for conversion is exempt from discharge."). A principal

Page 4

**Kimco Leasing Co. V. Robert Wilson**
**Case No. 07-3061**

reason: the tort of conversion is a general intent offense, meaning that only the act, but not necessarily the injury, be intentional. *See Dice v. White Family Cos.*, — N.E.2d —, 2007 WL 3121803 (Ohio App. 2 Dist., 2007).

In contrast, in *Kawaauhau v. Geiger* the Supreme Court interpreted the "willful" component of § 523(a)(6) as requiring a showing of a specific intent to cause injury, explaining:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead 'willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., 'reckless' or 'negligent,' to modify 'injury.' Moreover, . . . the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself."

523 U.S. at 61-62, 118 S.Ct. at 977 (internal citation and quotation omitted). A caveat, however: Given Geiger's comparison of § 523(a)(6)'s term "willful" to an intentional tort, it is established that, as with other specific intent torts, a "willful" injury may be found to exist not only when the debtor desire to cause injury, but also when the debtor is substantially certain that an injury will result. *See, e.g., Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001) ("[U]nder Geiger, the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct."). *See also, Lumbermens Mut. Cas. Co. v. S-W Industries, Inc.*, 39 F.3d 1324, 1328 (6th Cir. 1994), *citing Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984) ("an intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur.").

Page 5

Kimco Leasing Co. V. Robert Wilson
Case No. 07-3061

The tort of conversion is also dissimilar to § 523(a)(6) in another important aspect. It does not require the existence of malice. *Pruitt v. LGR Trucking, Inc.*, 148 Ohio App.3d 481, 487, 774 N.E.2d 273, 277 (2002). However, by its express terms, § 523(a)(6) requires that the injury be both willful and malicious. *Cash Amer. Fin. Svcs., Inc. v. Fox*, 370 B.R. 104, 119 (6th Cir. B.A.P. 2007). A malicious injury will exist under § 523(a)(6) if it arises as the result of a "conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986).

Yet, even under the heightened standard of § 523(a)(6), the picture presented by the Debtor's conduct is problematic. What particularly concerns the Court is the Debtor's long delay in returning the Creditor's office furniture. The Debtor defaulted on his obligation to the Creditor in the first part of 2006, but did not return any of the Creditor's office furniture until approximately a year later – after this adversary proceeding was filed on March 26, 2007. Such is not the typical conduct of an honest man. Also problematic, conveniently missing from the inventory of those items of returned furniture were those items having the greatest value.

To explain his failure to promptly return the Creditor's property, the Debtor pointed to a number of intervening events. First, the Debtor claimed that he was unable to promptly return the furniture because his truck broke down. Afterwards, the Debtor claimed that he was still unable to return the furniture because the landlord changed the locks at his business property, and thus he did not have access to the furniture. Finally, the Debtor claims that, once gaining access to the office furniture, and moving it to a storage facility, he could not provide access to the Creditor because he temporarily forgot the address of the storage facility. As for the missing items of furniture, the Debtor advanced the theory that his landlord, or other persons having access to his business office, may have stolen the Creditor's furniture.

As an initial matter, the Court found the Debtor's testimony to be elusive and unforthcoming. As such, the credibility which can be attached to those justifications offered by the Debtor is suspect.

Page 6

**Kimco Leasing Co. V. Robert Wilson**
**Case No. 07-3061**

But as a practicable matter, what makes those justifications offered by the Debtor ring hollow is that his cooperation was only forthcoming after he had filed for bankruptcy relief and then only after this particular action was commenced. Simply put, the Debtor only found it necessary to cooperate, and comply with his duties as the lessee of the Creditor's property, when faced directly with the prospect that his discharge in bankruptcy could be in jeopardy.

The Debtor's justifications are also unverifiable. As such, they resemble a kind of "the check is in the mail" excuse. Contextually speaking, the Debtor's excuses are also weak, particularly, the Debtor's excuse that he could not return the furniture because he forgot the address of his storage facility. Even if true, such a deficiency could have been quickly rectified. As for the missing items of furniture, the Court has just one question: if the Debtor truly suspected that the furniture was stolen, why is there no police report? Given, therefore, these concerns, the cumulative effect of those justifications offered by the Debtor tends not to paint a picture of compliance, but of the Debtor attempting, at every turn, to frustrate the Creditor.

Therefore, for all these reasons, the overall weight of the evidence shows that, endemic throughout their relationship, the Debtor exhibited a complete and utter disregard for the care of the Creditor's property. As such, it can only be concluded that the Debtor had to be substantially certain that an injury would result from his conduct. Moreover, given the lack of credibility which can be attached to the justifications offered by the Debtor, the Court likewise concludes that there exists no viable justification for the Debtor's actions. Accordingly, based upon the definitional precedent established for the terms "willful" and "malicious," *supra*, the injury caused by the Debtor is sufficient to sustain a finding of nondischargeability under § 523(a)(6).

In summation, the Court holds that the Creditor has sustained its burden of showing that it suffered injury to its property as the result of conduct on the part of the Debtor which, for purposes of § 523(a)(6), was both "willful" and "malicious." As such, the claim held by the Creditor against the

Page 7

Kimco Leasing Co. V. Robert Wilson
Case No. 07-3061

Debtor is a nondischargeable debt for purposes of bankruptcy law. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that, pursuant to 11 U.S.C. § 523(a)(6), the Plaintiff, Kimco Leasing Co., is hereby determined to hold a nondischargeable debt against the Debtor, Robert Wilson, in the amount of $2,536.55.

***IT IS FURTHER ORDERED*** that Clerk, United States Bankruptcy Court, issue a certificate of judgment in the amount reflected in the above order.

***IT IS FURTHER ORDERED*** that the Plaintiff's Complaint Objecting to the Debtor receiving an overall Discharge pursuant to 11 U.S.C. § 727, be, and is hereby, DISMISSED.

Dated: December 21, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 21st day of December , 2007 to:

Kimco Leasing Co
1910 St. Joe Center Rd, #12
Fort Wayne, IN 46825

H Buswell Roberts
1000 Jackson St
Toledo, OH 43604

Robert Lee Wilson
14578 U.S. 20A
Wauseon, OH 43567

Gary E Horn
4325 Willys Pkwy
Toledo, OH 43612

    /s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court